UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Progressive Northern Insurance Company,          Civil No. 05-0951 (PAM/RLE)
Progressive Classic Insurance Company,
Progressive Specialty Insurance Company,
Progressive Casualty Insurance Company,
and Progressive Northwestern Insurance
Company,

                 Plaintiffs,

v.                                                 **MEMORANDUM AND ORDER**

Alivio Chiropractic Clinic, Inc.;
Joshua Jason Anderson, D.C.; Alexis
Alarcon Aguilar; Andrea Kay Bongart,
individually and d/b/a Sunshine Clinical
Bodyshop; Mark Anthony Karney,
attorney at law, d/b/a Karney & Associates;
and Adolfo Cardona,

                 Defendants.

---

This matter is before the Court on Defendant Alexis Alarcon Aguilar's Motion to Dismiss and Defendant Andrea Kay Bongart's Motion to Dismiss. For the reasons that follow, the Motions are granted in part and denied in part.

## BACKGROUND

**A.**     **The Parties**

Plaintiffs initiated this action in June 2005, and they filed an Amended Complaint on October 7, 2005. Plaintiffs are insurance companies that underwrite and provide automobile insurance. Defendants are Alivio Chiropractic Clinic, Inc. ("Alivio"); Joshua Jason Anderson, a chiropractor and owner of Alivio; Alexis Alarcon Aguilar, the office manager at Alivio;

Andrea Kay Bongart, a massage therapist at Alivio; Mark Karney, an attorney; and Adolfo Cardona, another owner of Alivio. Plaintiffs' claims include a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"); a RICO conspiracy charge under 18 U.S.C. § 1962(d); unjust enrichment; intentional misrepresentation; negligent misrepresentation; constructive trust; health care fraud; and corporate practice of medicine.

Defendant Mark Karney previously brought a motion to dismiss, which was granted in part and denied in part on October 24, 2005. Defendant Aguilar's and Defendant Bongart's Motions to Dismiss are presently before the Court.

**B.     The Allegations**

The essence of Plaintiffs' claims is that Defendants have conspired and/or schemed to exploit illegal aliens in Minnesota to defraud insurance companies and policyholders for medical expense benefits under the Minnesota No-Fault Automobile Insurance Act. This exploitation has purportedly resulted in direct financial gain for Defendants, because the scheme inflates the nature and value of the injury claims to meet the required tort thresholds, for the purpose of obtaining higher personal injury settlements for car accidents.

Plaintiffs claim that Defendants employed "runners" or "cappers" to seek out car accidents and befriend illegal Hispanic victims. The runners then brought these victims back to Alivio for a medical examination. The clinic allegedly exaggerated the medical diagnosis and ordered unnecessary chiropractic and massage care for the victim. Defendants then submitted billing to the insurers based on these false services and collected payment to which they were not entitled. If questions or disputes arose, Defendants referred to their attorney,

Defendant Mark Karney. If the victims sought to cease treatment or expose the scheme, Defendants allegedly threatened to expose their illegal immigration status. In 2004, Plaintiffs suspended payments to Defendants and began an investigation. This litigation ensued.

Plaintiffs portray Defendant Aguilar as a runner and capper, who was the "face" of the scheme and the "nexus" which bound all Defendants together. According to Plaintiffs, Defendant Aguilar filled out applications for no-fault benefits, on which he misrepresented the nature and extent of the clients' injuries; acted as the claimant's legal representative; provided interpretation; and threatened clients' immigration status if they tried to break away from the control of the enterprise.

Plaintiffs submit that Defendant Bongart, who operated her massage therapy business out of Alivio, was also in on the scheme. Specifically, Plaintiffs aver that Bongart provided massage therapy using duplicate procedures which were already billed as chiropractic therapy. According to Plaintiffs, Bongart's notes and billings also reflect false complaints of pain.

**DISCUSSION**

**A.    Standard of Review**

For the purposes of the Motions to Dismiss, the Court takes all facts alleged in the Amended Complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Amended Complaint and reasonable inferences arising from the pleading favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.    Defendant Aguilar's Motion to Dismiss**

Defendant Aguilar brings his Motion to Dismiss on all seven of Plaintiffs' claims. He contends that the claims fail under Federal Rule of Civil Procedure 12(b)(6). Further, he argues that Plaintiffs did not satisfy the particularity requirement of Rule 9(b).

   1.    RICO Claims

To state a claim under RICO, Plaintiffs must plead that each Defendant violated RICO and that Plaintiffs were injured as a result of the violation. See 18 U.S.C. § 1964(c). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Plaintiffs' conspiracy claim under § 1962(d) depends on the success of their claim under § 1962(c). See 18 U.S.C. § 1962(d); Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.,

No. 05-0951 (PAM/RLE), 2005 WL 2739304, at *2, 3 (D. Minn. Oct. 24, 2005) (Magnuson, J.).

As to Defendant Aguilar's conduct, the Amended Complaint sufficiently describes his operation and management of the alleged enterprise. See Handeen v. Lemaire, 112 F.3d 1339, 1348 (8th Cir. 1997). Specifically, Plaintiffs submit that Defendant Aguilar was the "face of the enterprise" in that he targeted the Hispanic community as a runner and capper and brought prospective clients to Alivio. According to the Amended Complaint, Defendant Aguilar handled the day-to-day business of the clinic and helped clients with medical, legal, and insurance forms. In doing so, Plaintiffs contend he would falsify information. When clients resisted or threatened to reveal the scheme, Defendant Aguilar engaged in witness tampering and threatened to reveal their illegal immigration status in order to conceal the enterprise's activity. The Amended Complaint describes Defendant Aguilar's activities and association with the enterprise in considerable detail with respect to several particular claimants.

The Court now turns to the "enterprise" element. Under RICO, an enterprise must have three characteristics: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." Handeen, 112 F.3d at 1351. Here, the Amended Complaint alleges an enterprise distinct from the individuals named as RICO Defendants, namely, an "association-in-fact for the purpose of defrauding Plaintiffs of Available No-Fault medical expense benefits and personal injury settlements." (Am. Compl. ¶ 132.) As stated, the common purpose is to defraud Plaintiffs of medical expense benefits and personal injury settlements. The alleged

5

structure, entities, and individuals involved in the scheme are consistent. Plaintiffs allege that Defendants used Hispanic runners and cappers such as Defendant Aguilar to target illegal aliens involved in car accidents. The runner would bring the prospective client to Alivio and assist the client in submitting a claim to a no-fault insurance carrier. Finally, Alivio, Defendant Anderson, and Defendant Bongart would fraudulently bill the insurance companies. Plaintiffs have sufficiently alleged all the elements of a RICO enterprise.

As to the pattern of racketeering activity, the Amended Complaint charges Defendant Aguilar with engaging in numerous acts of mail fraud by submitting fraudulent forms and notes through the U.S. Mail, creating fraudulent documents in support of no-fault medical claims, engaging in witness tampering, and harboring illegal aliens. These predicate acts are related because they had the same purpose, results, victims, and methods of commission. See H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989). The acts also posed a threat of continued criminal activity because the scheme existed for several years. See id. at 242.

With respect to the predicate acts based on fraud, Defendant Aguilar challenges the allegations on the grounds they fail to satisfy the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b). However, the Court finds that the predicate acts based on mail and wire fraud are pled with sufficient particularity to withstand Rule 9(b). See Abels v. Farmers Commodities Corp., 259 F.3d 910, 919 (8th Cir. 2001). The Amended Complaint alleges that Defendant Aguilar engaged in mail fraud by submitting fraudulent HCFA 1500 forms and notes through the U.S. Mail. The Amended Complaint details the circumstances of the alleged fraud, including places, dates, and contents, with respect to

numerous claimants. Moreover, Plaintiffs attached copies of many of the allegedly fraudulent forms to the Amended Complaint.[1]

In addition, Plaintiffs have alleged at least two non-fraudulent predicate acts by Defendant Aguilar: acts of witness tampering. These acts need not be pled with particularity under Rule 9(b), and the Court finds these factual allegations alone sufficient to constitute the required predicate acts.

Finally, Defendant Aguilar's alleged activities occurred often enough to constitute a pattern of racketeering activity. Thus, Plaintiffs have adequately pled the third and fourth elements of their RICO claim against Defendant Aguilar, and he is not entitled to dismissal of the RICO count against him.

Plaintiffs' conspiracy claim under § 1962(d) depends on the success of their claims under § 1962(c). To show a RICO conspiracy, Plaintiffs must additionally allege the existence of a conspiracy to violate RICO and that Defendants entered into an agreement to breach the statute. 18 U.S.C. § 1962(d); Handeen, 112 F.3d at 1354-55. Here, the Amended Complaint states that Defendants, including Defendant Aguilar, agreed and conspired to violate RICO by submitting false billing forms, medical records, and affidavits with the intent to defraud

---

[1] The Court notes that much of the identifying information has been redacted from these documents. However, the remaining information easily puts Defendants on notice of the claims against them, especially when considered in combination with the corresponding allegations in the Amended Complaint and the fact that the documents were generated by Defendants.

Plaintiffs. Plaintiffs have sufficiently pled a claim of RICO conspiracy against Defendant Aguilar.

    2.    <u>Unjust Enrichment</u>

Unjust enrichment requires Plaintiffs to prove that Defendant Aguilar received something of value, to which he was not entitled, under circumstances that would make it unjust to permit its retention. <u>See</u> <u>Southtown Plumbing, Inc. v. Har-Ned Lumber Co.</u>, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Plaintiffs must show that Defendant Aguilar "was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." <u>First Nat'l Bank of St. Paul v. Ramier</u>, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted). Here, the Complaint alleges that Defendant Aguilar received money in connection with illegal activity, specifically, for acting as a runner and capper who targeted Hispanic individuals. This activity is prohibited by Minn. Stat. § 609.612. Plaintiffs have sufficiently pled a claim for unjust enrichment against Defendant Aguilar, and his Motion is denied as to this claim.

Defendant Aguilar also argues that he is entitled to dismissal because unjust enrichment is equitable in nature, and Plaintiffs have adequate remedies at law. Under Minnesota law, unjust enrichment is an equitable remedy that Plaintiffs may not pursue unless there is no adequate remedy at law. <u>See</u> <u>Southtown Plumbing</u>, 493 N.W.2d at 140. However, Federal Rule of Civil Procedure 8 permits pleading claims in the alternative, and dismissal is not warranted on this basis.

    3.    <u>Constructive Trust</u>

Plaintiffs allege that all Defendants received money obtained through fraudulent benefits claims. Asserting that Defendants are therefore constructive trustees of their money, Plaintiffs seek to impose a constructive trust on Defendants' assets. "A constructive trust is an equitable remedy imposed to prevent unjust enrichment and is completely dissimilar to an express or resulting trust." Freundschuh v. Freundschuh, 559 N.W.2d 706, 711 (Minn. Ct. App. 1997). Defendant Aguilar only briefly mentions this claim in his Motion, referring the Court to his argument on the unjust enrichment claim. Defendant Aguilar is not entitled to dismissal of the unjust enrichment claim, and he has not shown why the constructive trust claim must be dismissed. His Motion is denied on this point.

### 4. Intentional and Negligent Misrepresentation

Defendant Aguilar contends that the Amended Complaint fails to allege that he made intentional or negligent misrepresentations to Plaintiffs. A negligent misrepresentation occurs when the representor "ha[s] not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Safeco Inc. Co. of Am. v. Dain Bosworth Inc., 531 N.W.2d 867, 870 (Minn. Ct. App. 1995). To allege intentional misrepresentation, Plaintiffs must aver that Defendant

> (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

M.H. v. Caritas Family Serv., 488 N.W.2d 282, 289 (Minn. 1992).

9

Here, Plaintiffs plainly allege that Defendants intentionally made, or caused to be made, materially false representations to Plaintiffs in submitting claims and medical records. Plaintiffs contend that Defendants knew the representations to be false. Plaintiffs maintain they relied on the misrepresentations to their detriment in making medical expense benefits, which caused damage to them. Specifically with respect to Defendant Aguilar, Plaintiffs aver that he assisted claimants in filling out fraudulent billing claim forms and medical documents such as intake forms. Defendant Aguilar allegedly also had claimants sign blank documents and legal paperwork, which were subsequently dated for days that the claimants did not meet with any of the Defendants. When claimants later saw the paperwork completed by Defendant Aguilar, the information was incorrect. Examples of such documents, which were submitted to Plaintiffs, were Affidavits of No-Insurance and Applications for Benefits. Plaintiffs also allege that Defendant Aguilar notarized false signatures on documents which were then transmitted to the insurance companies. Plaintiffs claim that Defendant Aguilar personally profited from this fraudulent activity.

The Amended Complaint adequately details the allegations of intentional and negligent misrepresentation against Defendant Aguilar, with more than enough particularity to satisfy even the heightened pleading requirements of Rule 9(b). Consequently, Plaintiffs have sufficiently pled both intentional and negligent misrepresentation against Defendant Aguilar, and his Motion is denied as to these claims.

     5.     <u>Health Care Fraud</u>

Count Six of Plaintiffs' Complaint alleges that Defendants knowingly and willfully made false statements relating to health care matters, in violation of 18 U.S.C. § 1035. However, Plaintiffs concede they may not maintain a private right of action under this statute, and the claim is therefore dismissed against Defendant Aguilar.

6.   Corporate Practice of Medicine

The Complaint alleges that Defendant Anderson and Defendant Cardona incorporated Alivio as a for-profit corporation under Minnesota law. Plaintiffs further submit that a for-profit corporation is not permitted to provide health care services. However, this count contains no allegations against Defendant Aguilar, and the claim is dismissed against him.

C.   **Defendant Bongart's Motion to Dismiss**

Plaintiffs first attack Defendant Bongart's Motion to Dismiss as procedurally improper because she simultaneously filed an Answer to the Complaint. The Court recognizes that a party should not file a responsive pleading in conjunction with a motion to dismiss. However, in such a situation, the Court should consider the motion as predating the pleading. See U.S. Fid. & Guar. Co. v. Bank of Bentonville, 29 F. Supp. 2d 553, 555 (W.D. Ark. 1998) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 at 445 (2d ed. 1990)). Moreover, Defendant Bongart answered the original Complaint. After her Answer was filed, Plaintiffs filed their Amended Complaint. Defendant Bongart filed an Amended Motion

to Dismiss on the same day. The Court will treat the Motion to Dismiss as addressing the Amended Complaint and accordingly finds no procedural defect.[2]

   1.   RICO Claims

The Court finds that Defendant Bongart is entitled to dismissal of the RICO claims against her. Simply, she did not participate in the operation or management of the enterprise. The "operation or management" test imposes liability only on those individuals "who, by virtue of their association or employment, play a part in directing the enterprise's affairs." Handeen, 112 F.3d at 1348. A "professional does not conduct an enterprise's affairs through run-of-the-mill provision of professional services." Id.

> Mere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action. A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself.

Bennett v. Berg, 710 F.2d 1361, 1364 (8th Cir. 1983).

According to the Amended Complaint, Defendant Anderson referred claimants to Defendant Bongart, who provided therapy "using duplicate procedures already billed for either before or after chiropractic therapy." (Compl. ¶ 23.) However, there is no allegation that Defendant Bongart solicited clients, diagnosed ailments, or recommended treatment. There are no averments to support Defendant Bongart's direct involvement in the creation of the

---

[2] Defendant Bongart cursorily asks the Court to treat her motion as one for summary judgment under Federal Rule of Civil Procedure 12(c). The Court finds that conversion of the motion would be improper at this stage of the case and declines to analyze the pleadings under Rule 56.

alleged enterprise or her authority in the decision making process. See Handeen, 112 F.3d at 1350.

Moreover, the specific allegations in the Amended Complaint regarding Defendant Bongart show that she provided the professional service of massage therapy to clients who were referred to her, and she billed for those services. The Amended Complaint does not allege that she knew Defendant Anderson was also billing for the same treatment, nor does it allege that she billed for services which she did not provide. Significantly, unlike the professional in Handeen, neither the purported enterprise nor any of the other Defendants was a client of Defendant Bongart, which serves to further remove her from the operation or management of the enterprise. The Court recognizes that the Amended Complaint contains some allegations of fraudulent practices, as with Defendant Karney, but the Amended Complaint falls far short of alleging how Defendant Bongart directed the affairs of the enterprise. Accordingly, Defendant Bongart's alleged activities are insufficient to amount to operating or managing the purported scheme.

Plaintiffs' RICO claim against Defendant Bongart is dismissed. Because the RICO claim fails, the RICO conspiracy claim against Defendant Bongart is also dismissed.

2. Unjust Enrichment and Constructive Trust

The Amended Complaint alleges that Defendant Bongart received money in connection with illegal activities directed at Plaintiffs. The Amended Complaint does not allege, however, that Defendant Bongart received money for services she did not perform. Patients were referred to Defendant Bongart, and she provided the services as prescribed. Inequitable

13

retention of a benefit is an element of an unjust enrichment claim, and Plaintiffs did not plead that element as to Defendant Bongart. Furthermore, Plaintiffs failed to defend the propriety of this claim in their Memorandum in Opposition to the Motion. They argued only that they may plead claims in the alternative. The unjust enrichment and constructive trust claims are dismissed against Defendant Bongart.

### 3. Intentional and Negligent Misrepresentation

The Amended Complaint alleges that Defendants intentionally made, or caused to be made, materially false representations to Plaintiffs in submitting claims and medical records. Plaintiffs contend that Defendants knew the representations to be false. Plaintiffs maintain they relied on the misrepresentations to their detriment in making medical expense benefits, which damaged Plaintiffs. Specifically, Plaintiffs submit that Defendant Bongart billed for duplicate procedures already billed under chiropractic therapy. Plaintiffs also aver that Defendant Bongart's treatment notes and billing documents contain fabricated complaints of pain. Plaintiffs have sufficiently pled both intentional and negligent misrepresentation against Defendant Bongart. Thus, her Motion is denied as to these claims.

### 4. Health Care Fraud

Plaintiffs have conceded that they may not maintain a private right of action under 18 U.S.C. § 1035, and the claim is dismissed against Defendant Bongart.

### 5. Corporate Practice of Medicine

As with Defendant Aguilar, Plaintiffs have not asserted this claim against Defendant Bongart, and the claim is dismissed accordingly.

**CONCLUSION**

With respect to Defendant Aguilar's Motion to Dismiss, the health care fraud and corporate practice of medicine claims are dismissed. As to Defendant Bongart's Motion, the Court dismisses the RICO, RICO conspiracy, unjust enrichment, constructive trust, health care fraud, and corporate practice of medicine claims. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Andrea Kay Bongart's Amended Motion to Dismiss (Clerk Doc. No. 86) is **GRANTED in part** and **DENIED in part** in that Counts 1, 2, 3, 5, 6, and 7 against her are **DISMISSED with prejudice**; and

2. Defendant Alexis Alarcon Aguilar's Motion to Dismiss (Clerk Doc. No. 91)

is **GRANTED in part** and **DENIED in part** in that Counts 6 and 7 against him are **DISMISSED with prejudice**.

Dated: December 22, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
