UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Progressive Northern Insurance Company, Progressive Classic Insurance Company, Progressive Specialty Insurance Company, Progressive Casualty Insurance Company, and Progressive Northwestern Insurance Company, <br><br> Plaintiffs, <br><br> v. <br><br> Alivio Chiropractic Clinic, Inc.; Joshua Jason Anderson, D.C.; Alexis Alarcon Aguilar; Andrea Kay Bongart, individually and d/b/a Sunshine Clinical Bodyshop; Mark Anthony Karney, attorney at law, d/b/a Karney & Associates; and Adolfo Cardona; <br><br> Defendants. | Civil No. 05-0951 (PAM/RLE) <br><br><br><br><br><br><br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant Adolfo Cardona's Motion to Dismiss. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

**A.    The Parties**

Plaintiffs initiated this action in June 2005, and they filed an Amended Complaint on October 7, 2005. Plaintiffs are insurance companies that underwrite and provide automobile insurance. Defendants are Alivio Chiropractic Clinic, Inc. ("Alivio"); Joshua Jason Anderson, a chiropractor and owner of Alivio; Alexis Alarcon Aguilar, the office manager at Alivio; Andrea Kay Bongart, a massage therapist at Alivio; Mark Karney, an attorney; and Adolfo

Cardona, another owner of Alivio.  Plaintiffs' claims include a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"); a RICO conspiracy charge under 18 U.S.C. § 1962(d); unjust enrichment; intentional and negligent misrepresentation; constructive trust; health care fraud; and corporate practice of medicine.

**B.      The Allegations**

The essence of Plaintiffs' claims is that Defendants have conspired to exploit illegal aliens in Minnesota to defraud insurance companies and policyholders for medical expense benefits under the Minnesota No-Fault Automobile Insurance Act.  This exploitation has purportedly resulted in direct financial gain for Defendants because the scheme inflates the nature and value of the injury claims to meet the required tort thresholds for the purpose of obtaining higher personal injury settlements for car accidents.

Plaintiffs claim that Defendants employed "runners" or "cappers" to seek out car accidents and befriend illegal Hispanic victims.  The runners then brought these victims back to Alivio for a medical examination.  The clinic allegedly exaggerated the medical diagnosis and ordered unnecessary chiropractic and massage care for the victim.  Defendants then submitted billing to the insurers based on these false services and collected payment to which they were not entitled.  If questions or disputes arose, Defendants referred to their attorney, Defendant Mark Karney.  If the victims sought to cease treatment or expose the scheme, Defendants allegedly threatened to expose their illegal immigration status.  Specifically as to Defendant Cardona, Plaintiffs contend he is an active owner of Alivio, solicits accident

victims, and refers victims to Defendant Karney. In 2004, Plaintiffs suspended payments to Defendants and began an investigation. This litigation ensued.

**DISCUSSION**

**A.    Standard of Review**

For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Amended Complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Amended Complaint and all reasonable inferences favorably to Plaintiffs. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**B.    Motion to Dismiss**

Defendant Cardona brings his Motion to Dismiss on all of Plaintiffs' claims.

1.    RICO Claims

To state a claim under RICO, Plaintiffs must plead that Defendant Cardona violated RICO and that Plaintiffs were injured as a result. See 18 U.S.C. § 1964(c). A violation of § 1962(c) requires a plaintiff to show "(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity." U. Healthcare Corp. v. Am. Trade Ins. Co., 88 F.3d 563, 570 (8th Cir. 1996) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)). Plaintiffs' conspiracy claim under § 1962(d) depends on the

success of their claim under § 1962(c).  See 18 U.S.C. § 1962(d); Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc., No. 05-0951 (PAM/RLE), 2005 WL 2739304, at **2, 3 (D. Minn. Oct. 24, 2005) (Magnuson, J.).

Here, the RICO claim fails against Defendant Cardona because Plaintiffs did not sufficiently plead his participation in at least two predicate acts of racketeering listed in 18 U.S.C. § 1961(1)(B).  The Amended Complaint generally alleges predicate acts of mail fraud, wire fraud, witness tampering, and harboring illegal aliens against all Defendants.  However, the Amended Complaint contains no factual allegations that Defendant Cardona committed wire or mail fraud, tampered with witnesses, or harbored illegal aliens.

Plaintiffs rely on two acts to establish Defendant Cardona's participation in predicate acts of racketeering.  First, they allege he committed mail fraud by submitting a letter to Plaintiffs stating that he did not own Alivio.  This letter denying an ownership interest in Alivio is not criminal mail fraud.  Other than costing Plaintiffs money to litigate their claims against Cardona, Plaintiffs have not alleged that the letter was sent to obtain money or property from them.  See 18 U.S.C. § 1341.  With the other Defendants, Plaintiffs alleged they used the mail to send fraudulent bills, but they make no such allegation against Defendant Cardona.  Second, Plaintiffs contend that Defendant Cardona committed wire fraud because a telephone call to an informant was traced to Midwest Latino News.  This vague allegation, which does not even attribute the phone call to Defendant Cardona, is insufficient to establish either wire fraud or witness tampering.

Plaintiffs have also asserted the following specific acts by Defendant Cardona in the Amended Complaint, none of which constitutes predicate acts under RICO. An Alivio patient told Plaintiffs that Defendant Cardona sent as many as ten to fifteen Hispanic patients at a time to Defendants Anderson and Aguilar. This same informant said that Defendant Cardona and Defendant Anderson had an employer-employee relationship. Another informant said that Defendant Cardona told him that his case was worth $100,000. Defendant Cardona gave this informant Defendant Aguilar's telephone number and told him to set up an appointment. The informant thought Defendant Cardona was an attorney who was representing him. Another claimant received a telephone call from a number traced to a business owned by Defendant Cardona, Latino Midwest News. At some point after the litigation began, Defendant Cardona wrote a letter to Plaintiffs denying that he owned Alivio. Although the Amended Complaint avers Defendant Cardona's participation in the scheme, none of the alleged activities amount to mail fraud, wire fraud, witness tampering, or harboring illegal aliens. Additionally, the Amended Complaint does not aver that Defendant Cardona could have reasonably foreseen the other Defendants' use of the wires or mail to perpetuate the fraud. See Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999) (listing elements of mail and wire fraud). There are no other allegations that Defendant Cardona used the telephone to refer clients or tamper with witnesses. There are no allegations that he harbored illegal aliens.

Plaintiffs' RICO claim against Defendant Cardona is dismissed. Because the RICO claim fails, the RICO conspiracy claim against Defendant Cardona is also dismissed.

### 2. Unjust Enrichment

Unjust enrichment requires Plaintiffs to prove that Defendant Cardona received something of value, to which he was not entitled, under circumstances that would make it unjust to permit its retention. See Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Plaintiffs must show that Defendant Cardona "was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981) (internal quotations omitted). Here, the Amended Complaint alleges that Defendant Cardona profited from illegal activity because he, as an owner of Alivio, would have gained financially from the clinic's activities. Plaintiffs have sufficiently pled a claim for unjust enrichment against Defendant Cardona, and his Motion is denied as to this claim.

### 3. Constructive Trust

"A constructive trust is an equitable remedy imposed to prevent unjust enrichment and is completely dissimilar to an express or resulting trust." Freundschuh v. Freundschuh, 559 N.W.2d 706, 711 (Minn. Ct. App. 1997). Because Defendant Cardona is not entitled to dismissal of the unjust enrichment claim, the related constructive trust claim remains. The Motion is denied on this point.

### 4. Intentional and Negligent Misrepresentation

A negligent misrepresentation occurs when the representor "ha[s] not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Safeco Inc. Co. of Am. v. Dain Bosworth Inc., 531 N.W.2d

6

867, 870 (Minn. Ct. App. 1995). To allege intentional misrepresentation, Plaintiffs must aver that Defendant Cardona:

> (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

M.H. v. Caritas Family Serv., 488 N.W.2d 282, 289 (Minn. 1992).

Unlike with the other Defendants, the Amended Complaint does not allege that Defendant Cardona made any materially false representations to Plaintiffs with respect to the insurance transactions at issue. Defendant Cardona was not involved in this aspect of the business. Nevertheless, Plaintiffs attempt to save this claim by relying on the letter in which Defendant Cardona disavowed ownership of Alivio. However, the damage they allege from the misrepresentation is only the cost of litigating the misrepresentation claims. The consequent costs of litigation do not establish the essential element that Plaintiffs relied on the representation to their detriment. In addition, Plaintiffs have not alleged that they actually relied on the letter. The misrepresentation claims are dismissed against Defendant Cardona.

    5.    <u>Health Care Fraud</u>

Count Six of the Amended Complaint alleges that all Defendants knowingly and willfully made false statements relating to health care matters, in violation of 18 U.S.C. § 1035. However, Plaintiffs concede they may not maintain a private right of action under this statute, and the claim is therefore dismissed against Defendant Cardona.

6.   Corporate Practice of Medicine

The Amended Complaint alleges that Defendants Cardona and Anderson incorporated Alivio as a for-profit corporation under Minn. Stat.§ 302A.  The corporate practice of medicine doctrine prohibits the corporate employment of chiropractors.  Isles Wellness, Inc. v. Progressive N. Ins. Co., 703 N.W.2d 513, 524 (Minn. 2005).  Here, the Amended Complaint alleges that Defendant Cardona incorporated Alivio and employed Defendant Anderson as the Alivio chiropractor.  This is sufficient to state a claim under the corporate practice of medicine doctrine.

Defendant Cardona also challenges this claim on the grounds that Plaintiffs, as private actors, have no remedy under Minn. Stat.§ 302A.  The Isles Wellness court remanded the issue of whether insurers must pay bills for services provided by clinics who violate the statute, 703 N.W.2d at 524, but the state court of appeals has not yet determined what remedy is available.  Given the state of the law at this time, the Court will not grant dismissal on this basis.  It is conceivable that Plaintiffs would be entitled to seek recovery from Defendant Cardona if he owned Alivio and benefitted financially from Defendant Anderson's activities. Defendant Cardona's Motion is denied on the corporate practice of medicine claim.

**CONCLUSION**

The Court grants Defendant Cardona's Motion on the RICO, negligent and intentional misrepresentation, and health care fraud claims.  The corporate practice of medicine, unjust enrichment, and constructive trust claims remain.  Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Adolfo Cardona's Motion

to Dismiss (Docket No. 119) is **GRANTED IN PART** and **DENIED IN PART**. Counts 1, 2, 4, and 6 against him are **DISMISSED WITH PREJUDICE.**

Dated: April 21, 2006

                                                              s/ Paul A. Magnuson
                                                              Paul A. Magnuson
                                                              United States District Court Judge