UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Progressive Northern Insurance Company,  Civil No. 05-0951 (PAM/RLE)
Progressive Classic Insurance Company,
Progressive Specialty Insurance Company,
Progressive Casualty Insurance Company,
and Progressive Northwestern Insurance
Company,

                      Plaintiffs,

v.  **MEMORANDUM AND ORDER**

Alivio Chiropractic Clinic, Inc.;
Joshua Jason Anderson, D.C.; Alexis
Alarcon Aguilar; Andrea Kay Bongart,
individually and d/b/a Sunshine Clinical
Bodyshop; Mark Anthony Karney,
attorney at law, d/b/a Karney & Associates;
and Adolfo Cardona,

                      Defendants.

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction, a Rule 54(b) Entry of Final Judgment, and a Rule 25 Substitution. For the reasons that follow, the Motion is denied.

**BACKGROUND**

This action was filed in June 2005 by Plaintiffs, various insurance companies that underwrite and provide automobile insurance. Defendants are Alivio Chiropractic Clinic, Inc. ("Alivio"); Joshua Jason Anderson, a chiropractor and owner of Alivio; Alexis Alarcon Aguilar, the office manager at Alivio; Andrea Kay Bongart, a massage therapist at Alivio; Mark Karney, an attorney; and Adolfo Cardona, another owner of Alivio.

The Amended Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1962(c) ("RICO"); a RICO conspiracy under 18 U.S.C. § 1962(d); unjust enrichment; intentional misrepresentation; negligent misrepresentation; constructive trust; health care fraud; and corporate practice of medicine.  Plaintiffs allege that Defendants conspired and schemed to exploit illegal aliens in order to defraud insurance companies for medical expense benefits.  This exploitation has purportedly resulted in direct financial gain for Defendants, because the scheme inflates the nature and value of the injury claims to meet the required tort thresholds, for the purpose of obtaining higher personal injury settlements for car accidents within Minnesota. Plaintiffs theorize that Defendants employed "runners" or "cappers" to seek out car accidents and befriend illegal Hispanic victims.  The runners then brought these victims back to Alivio for medical examinations.  Defendants exaggerated the medical diagnoses, according to Plaintiffs, and ordered unnecessary chiropractic and massage therapy for the victims.  Defendants submitted bills to the insurers based on these false services and collected payments to which they were not entitled.  If the victims tried to cease treatment or expose the scheme, Defendants allegedly threatened to expose their illegal immigration status.  In 2004, Plaintiffs suspended payments based on the billing patterns and the nexus between all Defendants and began an investigation.  Plaintiffs filed suit on May 18, 2005.

On September 29, 2005, Defendant Anderson opened a new clinic, Lake Street Chiropractic Clinic ("Lake Street Clinic").  Plaintiffs claim that Defendants have not cooperated with Plaintiffs' investigation into the Lake Street Clinic.  However, Defendants and

2

the Lake Street Clinic continue to submit claims for no-fault medical expenses to Plaintiffs, and Defendant Karney continues to petition for no-fault arbitrations.

On March 15, 2006, the Court stayed this case pending the resolution of a criminal investigation into Defendants' activities, with two narrow exceptions. The Court permitted the parties to continue briefing a pending motion to dismiss, and further permitted Plaintiffs to file a formal motion under Federal Rule of Civil Procedure 65. Plaintiffs now move for a preliminary injunction under Rule 65 against Defendants Alivio, Anderson, Bongart, and Karney, and non-party Lake Street Clinic, enjoining them from submitting no-fault medical expense benefit claims to Plaintiffs and staying all no-fault arbitration proceedings involving Defendants Anderson, Alivio, and Bongart. Plaintiffs also move for a substitution of parties under Federal Rule of Civil Procedure 25 and for an entry of final judgment under Federal Rule of Civil Procedure 54(b).

**DISCUSSION**

A.   **Plaintiffs' Requests under Rules 25 and 54**

The Court stayed this case with two narrow exceptions, neither of which contemplated a motion under Rule 25 or Rule 54(b). Plaintiffs have not presented grounds warranting a lift of the stay. Accordingly, the Court denies the requests for a Rule 25 substitution and for a Rule 54(b) entry of final judgment.

B.   **Plaintiffs' Request for a Preliminary Injunction**

The Court may issue a preliminary injunction only if Plaintiffs demonstrate that: (1) they will suffer irreparable harm absent the injunction; (2) they will likely succeed on the

merits; (3) the balance of harms favors Plaintiffs; (4) the public interest favors Plaintiffs.  See Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

    1.    <u>Irreparable Harm</u>

Plaintiffs argue that they will be irreparably harmed by the continued submission of no-fault insurance claims and arbitration petitions.  The Court is not convinced for several reasons.  First, a party has not shown irreparable harm if its injuries can be remedied in a lawsuit for money damages.  Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987).  Here, the Amended Complaint primarily seeks money damages, and Plaintiffs have not shown that a monetary remedy would be inadequate.

Second, Plaintiffs claim they are unable to present evidence of Defendants' alleged fraud at the arbitration hearings.  However, this is Plaintiffs' tactical choice to a large degree, and Plaintiffs acknowledge that they typically did not even seek additional discovery for the arbitration proceedings.  For example, Plaintiffs subpoenaed Defendant Anderson only once to testify at an arbitration hearing, even before the stay was issued.  If Plaintiffs have evidence that certain medical services were not actually provided, they could ask the claimant about this at the hearing, but they have not.  Furthermore, Plaintiffs receive evidence related to the claims submitted and for the arbitration hearings.  The relevant medical records and bills are submitted to the arbitrator notwithstanding the stay in this case.  Plaintiffs continue to send claimants for adverse medical examinations and to submit their records for their medical expert's review.  Indeed, the very materials submitted by Plaintiffs in support of their Motion belie their claim

of harm by deficient discovery. The Court finds no irreparable harm caused by the discovery or presentation of evidence in the arbitration proceedings.

"The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." Id. at 418; see also Dataphase, 640 F.2d at 114 n.9. Accordingly, the Court denies Plaintiffs' Motion on this basis, even though a balancing of all the Dataphase factors also supports a denial of the Motion as discussed below.

### 2. Likelihood of Success on the Merits

To show a likelihood of success on the merits, Plaintiffs refer to the allegations in their Amended Complaint and note that a criminal investigation is ongoing. Plaintiffs have also presented evidence of discrepancies between medical and billing records and the treatment claimants said they received. Plaintiffs' expert opined that medical records submitted to Plaintiffs have been fabricated. The evidence is consistent with Plaintiffs' allegation of Defendants' scheme to inflate the nature and value of claims in order to obtain no-fault benefits. Accordingly, Plaintiffs have established a likelihood of success.

### 3. Balance of Harms

Plaintiffs argue that the continued submission of claims and no-fault arbitration petitions will result in multiple money judgments against them. Defendants submit, however, that Plaintiffs have a full opportunity to present their defenses in the arbitration proceedings. Specifically, Plaintiffs could contest the payment of no-fault claims at the hearing by presenting evidence of Defendants' allegedly fraudulent activity. In fact, Hennepin County District Judge Charles Porter labeled Plaintiffs' decision not to present arguments about fraud at the arbitration hearings as purely tactical and refused to vacate arbitration awards against them. (Tostrud Aff. Ex. 2, Apr. 20, 2006.)

The balance of harms weighs against Plaintiffs. The injunction sought by Plaintiffs will adversely affect patients and claimants who are not parties to this case. Plaintiffs conceded during oral argument that the primary concern related to this factor is the claimants. According to Plaintiffs, the patients and claimants would not be harmed by an injunction because Defendants have taken assignment of their claims. However, the assignments mean only that the patients have authorized the insurance companies to pay the practitioners directly, not that the patients have relinquished any rights or empowered Defendants to act legally on their behalf. Such assignments are a universal practice to ensure merely that when an insurance company pays a claim, the check is sent to the provider, not to the claimant. In addition, the claimant, not the provider, remains the party to the arbitration with the insurer; the assignment does not place the provider in the claimant's shoes.

Further tipping the balance of harms away from Plaintiffs is their failure to pay the claims submitted by Defendants since bringing suit, as well as the awards even in fully-contested arbitrations. Thus, the continued submission of claims and petitions is not costing Plaintiffs financially because they are not paying the awards or claims.

    4.  <u>Public Interest</u>

The public interest factor weighs against issuing an injunction. In Plaintiffs' favor, Minnesota has a significant interest in detecting and preventing insurance fraud. On the other hand, Minnesota also has a significant interest in its regulatory, no-fault arbitration scheme. Moreover, insurance claimants have a significant interest in having their claims either paid or adjudicated, and practitioners have a significant interest in having insurance companies pay valid claims.

**CONCLUSION**

Plaintiffs' requests under Rule 54(b) and Rule 25 are denied because they are barred by the stay in this case. In addition, Plaintiffs have failed to show that they will be irreparably harmed by the continued submission of claims and arbitration petitions. The balance of all the <u>Dataphase</u> factors also weighs against Plaintiffs. Plaintiffs are therefore not entitled to a preliminary injunction. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Preliminary

Injunction, a Rule 54(b) Entry of Final Judgment, and a Rule 25 Substitution (Doc. No. 155) is **DENIED**.

Dated: May 16, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
